**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TRASELYNN ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-CV-0370-CVE-SH** |
| | ) | |
| **BROOKSHIRE GROCERY COMPANY, d/b/a REASOR'S** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# OPINION AND ORDER

Before the Court is defendant's motion to dismiss (Dkt. # 10), requesting dismissal with prejudice of plaintiff's claims for tortious retaliation under Oklahoma common law and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-3(a). Plaintiff has opposed the motion (Dkt. # 14), and defendant has replied (Dkt. # 15).

## I.

On June 18, 2026, plaintiff, appearing pro se, filed a complaint (Dkt. # 1) alleging that she was wrongfully terminated because of her opposition to certain drug dispensing and recordkeeping policies of defendant and her opposition to a hostile work environment created by a temporary pharmacist who listened to pornographic material while at work. Plaintiff is a licensed pharmacist. Dkt. # 1, at 1. On or about February 17, 2025, plaintiff assumed the role of pharmacist in charge at defendant's Reasor's store 921, located in Tulsa County, Oklahoma. Id. at 3.

On or about May 1, 2025, plaintiff conducted a targeted audit of controlled substances at store 921 upon developing "reasonable suspicion of irregularities," and in so doing, discovered evidence of controlled substance diversion. Id. at 4-5. Plaintiff alleges that she conducted the targeted audit "in strict accordance with her professional and statutory obligations as [p]harmacist

in [c]harge." Id. On that same day, plaintiff reported the evidence of the controlled substance diversion to Sarah Coday, store director at store 921. Id. at 5. Plaintiff then conducted a "more complete inventory count" of the controlled substances within store 921's pharmacy and reported the full results to pharmacy management via email on or about May 3, 2025. Id. Following her discovery, plaintiff implemented several new policies at store 921 to prevent further diversion of controlled substances, including: "(a) assigned lockers in the backroom for all pharmacy staff; (b) a prohibition on personal items being brought into the pharmacy; and (c) the recreation [sic] and maintenance of a C2 logbook for Schedule II controlled substances." Id. During interviews conducted by a fraud analyst for defendant, a pharmacy technician, A.M., admitted to the controlled substance diversion and was subsequently terminated. Id. At plaintiff's request, pharmacy staff were administered drug tests. Id. Another pharmacy technician, H.C., failed the drug test and was also terminated. Id. Consistent with her responsibilities as pharmacist in charge, plaintiff identified the controlled substance diversion, implemented corrective measures, strengthened internal controls, requested employee drug testing, and worked with store management to prevent future issues. Id. at 5-6. Charlotte Weller, senior manager of pharmacy operations, reported the controlled substance diversion to the Drug Enforcement Administration, reporting that defendant was administering drug tests to employees to prevent further diversion. Id. at 6.

On or about May 8, 2025, Charlotte Weller distributed a written policy to defendant's store 921 pharmacists governing the procedure for filling a single prescription that requires two different national drug codes (NDCs). Id. Plaintiff alleges that, under Oklahoma law, dispensers are required to transmit accurate controlled substance dispensing data to the state prescription monitoring program (PMP). Id. at 6-7. Plaintiff alleges that the policy distributed by Charlotte Weller directed

pharmacy staff to "falsify documents related to the sale of controlled substances." Id. at 6. Specifically, the policy required that, when a partial controlled substance was filled under one NDC and the remainder was to be completed under a second NDC, the initial transaction was to be released from the system and recorded as a completed sale, at which time a PMP report would be generated. Id. Plaintiff contends that the PMP report "would then reflect an incorrect dispensing date, time[,] and potentially an incorrect patient representative, because the transaction was treated as completed when it was not." Id. at 7.

On May 15, 2025, plaintiff emailed Charlotte Weller and Neil Ducote, vice president of pharmacy, informing them of her refusal to falsify controlled substance documents and "reported the illegal nature of the policy." Id. That same day, Charlotte Weller called plaintiff "to defend the policy and persuade the [p]laintiff to adhere to it." Id. at 7-8. Charlotte Weller informed plaintiff that, under the policy, the first prescription would not be reported until "end of business" and that both fills would likely be picked up by the customer on the same day. Id. at 8. Plaintiff replied that the first fill is reported to the PMP immediately upon dispensing and that regardless of timing, the documents associated with the first partial fill would be falsified because the recorded time and the identity of the person picking up the medication, if different, would be incorrect. Id.

Plaintiff alleges that she continued to raise "compliance concerns" with management and "sought guidance regarding pharmacy practice that she reasonably believed violated Oklahoma and federal law governing controlled substances." Id. For example, plaintiff sent multiple emails to upper management raising concerns about defendant's "widespread non-compliance with DEA requirements to maintain identification on file for both the patient and the person picking up

controlled substances" and defendant's failure to document the "triad" of co-prescribed narcotics, benzodiazepines, and muscle relaxants in accordance with DEA guidelines Id. at 16.

On or about May 26, 2025, Charlotte Weller delivered an "unwarranted negative performance review" to plaintiff alleging that, inter alia, plaintiff violated company policy by working while ill on May 23, 2025; failing to follow company policy regarding personal items in the pharmacy; not supporting the company regarding H.C.'s termination; and demanding drug testing for employees "without authority." Id. at 10-12. Blake Poulter, pharmacy zone manager, and an unnamed human resources representative, were also present for plaintiff's performance review. Id. At no point prior to plaintiff raising concerns about the May 8 policy did defendant criticize plaintiff's handling of the controlled substance diversion investigation or the remedial measures she implemented. Id. at 6.

As to the incident on May 23, 2025, plaintiff alleges that she arranged for coverage due to illness that day. Id. at 10. The pharmacist assigned to cover plaintiff's shift was a temporary contract pharmacist named "Larry." Id. Shortly after Larry arrived at store 921, plaintiff received an urgent telephone call from the lead pharmacy technician (the unnamed female technician). Id. The unnamed female technician expressed "significant distress" about being required to work with Larry because she did not feel comfortable being alone with Larry in the pharmacy. Id. The unnamed female technician "reminded" plaintiff that she had previously reported Larry to human resources for "sexually inappropriate conduct in the workplace." Id. Plaintiff alleges that Larry had previously listened to "graphic pornographic material" while working in the pharmacy at store 921. Id. at 23. Plaintiff complained to management regarding the "sexually hostile work environment" created by Larry. Id. Plaintiff alleges that she was informed that unless she personally reported to work, Larry would remain assigned to cover her shift. Id. at 10. Plaintiff alleges that defendant's

actions of dispatching Larry to cover plaintiff's shift on May 23, 2025, with knowledge that the unnamed female technician had previously reported Larry to human resources, placed plaintiff's staff in an unsafe and hostile work environment. Id. at 23-24. Faced with the choice of leaving her employee in what plaintiff alleges she reasonably believed to be an unsafe working environment or reporting to work despite her illness, plaintiff chose to report to work. Id. at 10. Plaintiff wore an N95 mask and took "reasonable precautions to protect others." Id. Larry was relieved of his coverage duties at store 921 and eventually, another pharmacist provided coverage for plaintiff. Id.

On or about June 1, 2025, Charlotte Weller directed a reduction in plaintiff's support staff's scheduling hours, from an average of 185 hours to 127 hours per week. Id. at 12. Store 921 already had reduced staff due to the prior termination of A.M. and H.C. Id. Plaintiff alleges that the staffing reduction was intended to undermine plaintiff's ability to perform her duties successfully and to manufacture grounds for disciplinary action against her. Id. at 13. Due to the staff reduction, plaintiff was required to work twenty to thirty hours of overtime per week, including multiple fifteen-hour shifts. Id. Plaintiff also alleges that, during the period of reduced support staff hours, the pharmacy was unable to meet promised completion times for prescriptions, was forced to close the drive-through on multiple occasions, and received increased customer complaints. Id. Some time after plaintiff was terminated, Blake Poulter resumed scheduling support staff hours at store 921 to 185 to 200 hours per week. Id. at 14. Plaintiff alleges that the staffing reduction was not driven by legitimate business needs. Id.

On June 17, 2025, Charlotte Weller arranged for Sandy Chang, a district pharmacy technician, to conduct an unscheduled audit of store 921. Id. Plaintiff alleges that Sandy Chang was not "neutral," as she had previously filed a complaint with human resources against plaintiff and

referred to plaintiff as a "narcist [sic] bitch" to another pharmacist. Id. Plaintiff alleges that Sandy Chang counted over 200 bottles of controlled substances, far exceeding the scope of the five-item random sample required by the audit form, and found four controlled substances with alleged variances. Id. at 14-15. Plaintiff was not given an opportunity to research or respond to the alleged variances. Id. at 15. On or about June 19, 2025, Charlotte Weller delivered a second negative performance review and suspended plaintiff. Id. at 16. The grounds for the suspension were based on the audit results and the same negative feedback of the May 26 review. Id. That same day, Charlotte Weller physically removed plaintiff's pharmacist license from the wall of store 921. Id. at 18.

On the morning of June 20, 2025, plaintiff emailed Neil Ducote stating, in part, that the adverse actions against her were "clearly retaliation for reporting the multiple violations that are happening under [Charlotte Weller's] watch" and that Charlotte Weller was "looking for a scapegoat to blame the diversion on instead of taking responsibility that Brookshires [sic] has not had adequate control of the pharmacy." Id. Later that same day, plaintiff was terminated via telephone by Charlotte Weller and Joe Hedges, a human resources employee. Id. at 17. Plaintiff was informed that the reasons for her termination were negative customer complaints about plaintiff, plaintiff's "lack of control of inventory over the last 30 days," and that plaintiff had "checked out and removed herself emotionally from her job." Id.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff alleges that in defendant's 250-page position statement, defendant admitted that the controlled substance dispensing policy at issue was "wrong." Id. at 19. On March

21, 2026, plaintiff received a notice of right to sue from the EEOC.[1] Plaintiff brings three claims for relief against defendant: (1) wrongful discharge in violation of Oklahoma public policy under Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), (2) tortious retaliation under Oklahoma common law, and (3) retaliation in violation of Title VII. Defendant has not moved to dismiss the Burk wrongful discharge claim.

**II.**

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."

---

[1] In her complaint, plaintiff states that the EEOC "issued" the notice of right to sue on March 21, 2026. Dkt. # 1, at 19. In fact, the notice of right to sue is dated as issued on March 18, 2026. Dkt. # 10-1, at 1. Plaintiff admits that she made a typographical error in the complaint; the EEOC issued the notice of right to sue on March 18, 2026, and plaintiff received the same on March 21, 2026. Dkt. # 14, at 5. In its motion to dismiss, defendant argued that because plaintiff failed to allege that she filed her Title VII claim within ninety days of receiving the notice of right to sue, the Court lacks subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Dkt. # 14, at 5. In her reply to the motion to dismiss, plaintiff explained the typographical error. Defendant accordingly conceded the issue of timeliness. Dkt. # 15, at 1.

Twombly, 550 U.S. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft, 556 U.S. at 684. For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

In addition, pro se pleadings must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). For purposes of reviewing a complaint for failure to state a claim, all allegations in the complaint must be presumed true and construed in a light most favorable to plaintiff. Hall, 935 F.2d at 1109; Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988). Pro se complaints are held to less stringent standards than pleadings drafted by lawyers, and the court must construe them liberally. Haines, 404 U.S. at 520. Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations. Hall, 935 F.2d at 1110. "[G]eneral assertions of discrimination and retaliation, without any details whatsoever of events . . ., are insufficient to survive a motion to dismiss. While specific facts are not necessary, some facts are." Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 1012) (internal citations and quotation marks omitted). Moreover, even pro se plaintiffs are required to comply with the

"fundamental requirements of the Federal Rules of Civil Procedure." Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

**A. Tortious Retaliation Under Oklahoma Common Law**

Plaintiff's second claim seeks relief for "tortious retaliation" under Oklahoma common law. Dkt. # 1, at 21. Plaintiff alleges that her termination was causally connected to her "protected activity" of reporting her issues with defendant's May 8 policy distributed by Charlotte Weller and was the "culmination of the retaliatory campaign waged by Charlotte Weller in the approximately five weeks following [p]laintiff's refusal to falsify controlled substance records." Id. at 18. Plaintiff alleges that the retaliatory acts included "two unwarranted negative performance reviews," an "unjustified and dramatic reduction in support staff hours," an "improperly conducted audit by a biased auditor," a suspension "without basis," and her termination on June 20, 2025. Id.

Defendant argues that Oklahoma common law does not recognize a claim of "tortious retaliation." Dkt. # 10, at 4. Defendant argues that the only common law claim for relief for wrongful discharge in Oklahoma is based on Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989). Dkt. # 10, at 4. Defendant argues that plaintiff's second claim for relief is not cognizable under Oklahoma common law except to the extent that it seeks relief for plaintiff's wrongful termination, in which case it is duplicative of plaintiff's first claim for relief for wrongful discharge under Burk. Dkt. # 10, at 4. Plaintiff argues that her "tortious retaliation" claim is not solely based on her termination; rather, plaintiff seeks relief for a "continuous course of retaliatory conduct that began well before her discharge and culminated in her termination." Dkt. # 14, at 5.

In Oklahoma, an employment contract of indefinite duration is terminable "at-will," and an employer may discharge an employee "for good cause, for no cause or even for cause morally wrong,

without being thereby guilty of legal wrong." Burk, 770 P.2d at 26; see also Hayes v. Eateries, Inc., 905 P.2d 778, 781 (Okla. 1995). In Burk, the Oklahoma Supreme Court adopted a public policy exception to the at-will termination rule. Id. at 28. Burk established a common law cause of action, arising in tort, for an employee who is discharged "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Id. at 29. The Oklahoma Supreme Court has clarified that discharge for purposes of a Burk tort claim, as it is commonly referred to, may be either actual or constructive. Ho v. Tulsa Spine & Specialty Hosp., L.L.C., 507 P.3d 673, 678 (Okla. 2021). In 2011, the Oklahoma legislature amended the Oklahoma Anti-Discrimination Act (OADA), Okla. Stat. tit. 25, § 1101, et seq., to create a statutory cause of action for employment-based discrimination or retaliation based on race, color, religion, sex, national origin, age, disability, or genetic information with respect to the employee, and to abolish common law remedies, including Burk tort claims, for the same. Id. § 25-1350.

The Court agrees with defendant that plaintiff does not have a legal basis to seek relief based on "tortious retaliation." Plaintiff does not cite, and the Court is not aware of, any authority suggesting that "tortious retaliation" is a cognizable claim under Oklahoma common law. Plaintiff does not point to any case law from which the Court could recognize such a claim. The only remedy under Oklahoma common law from which plaintiff may seek relief for defendant's alleged retaliatory actions, including plaintiff's actual discharge, is a Burk tort claim. The Court agrees with defendant that, to the extent that plaintiff's second claim seeks relief for wrongful termination, the claim is duplicative of plaintiff's first claim. Defendant's retaliatory actions leading up to plaintiff's termination may be relevant to her Burk tort claim for wrongful discharge. Nevertheless, other than

a Burk tort claim, Oklahoma law does not provide a separate legal basis for seeking relief from the alleged retaliatory actions.

Construing the pleadings liberally, the Court considers whether plaintiff's second claim attempts to seek relief for a statutory violation under the OADA. However, plaintiff's second claim does not seek relief for discrimination based on any protected category under the OADA. Accordingly, the Court finds that plaintiff has failed to state a common law or statutory basis for her second claim for relief. As such, plaintiff's claim for "tortious retaliation" under Oklahoma common law should be dismissed.

**B. Retaliation Under Title VII**

Plaintiff's third claim for relief alleges that she engaged in protected activity within the meaning of 42 U.S.C. § 2000e-3(a) by opposing what she reasonably believed to be a sexually hostile work environment. Dkt. # 1, at 23. Specifically, plaintiff alleges that she complained to management regarding the sexually hostile work environment created by Larry (the temporary pharmacist who was previously reported by the unnamed female technician for listening to pornography while working at store 921) when he was assigned to cover plaintiff's shift on May 23, 2025. Id. Defendant argues that plaintiff's belief that she was opposing a sexually hostile work environment was not reasonable because a "single minor incident not directed at any particular employee" cannot give rise to a Title VII claim. Dkt. # 10, at 6.

The opposition clause of Title VII's anti-retaliation provision bars an employer from discriminating against an individual who has "opposed any practice made an unlawful employment practice" by the statute. 42 U.S.C. § 2000e-3(a); see also Reznik v. inContact, Inc., 18 F.4th 1257, 1260 (10th Cir. 2021). Title VII forbids actions taken on the basis of sex, inter alia, that

"discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). To state a prima facie case of retaliation under Title VII, a plaintiff must plausibly allege that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would consider the defendant's challenged action materially adverse, and (3) a causal connection existed between the protected opposition and the materially adverse action. Reznik, 18 F.4th at 1260. As to the first element, a plaintiff need not establish that the conduct actually violated Title VII, just that she had both a subjective good faith and objectively reasonable belief that it did. Id. The Tenth Circuit has held that a Title VII claim may not survive if the claim is "based on an unreasonable good-faith belief that the underlying conduct violated Title VII." Crumpacker v. Kan. Dep't of Hum. Res., 338 F.3d 1163, 1171 (10th Cir. 2003). Here, the issue raised by defendant is whether plaintiff's belief is objectively reasonable.

The Tenth Circuit has adopted an objective reasonableness inquiry that considers "the law against what a reasonable employee would believe." Reznik, 18 F.4th at 1262. Thus, determining whether a plaintiff's belief that she was opposing conduct unlawful under Title VII is objectively reasonable involves "analyzing the law, the relevant attendant circumstances of [plaintiff's] job, and the severity, pervasiveness, and duration of the alleged discrimination." Id. at 1264.

Defendant asserts that the underlying substantive law precludes Title VII liability for the isolated incident in which Larry listened to pornographic material at work. Dkt. # 10, at 3. Defendant argues that, because as a matter of law no reasonable person could have believed that Larry's conduct violated Title VII, plaintiff's retaliation claim cannot survive. Id. at 5. Defendant points to Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268 (2001), in which the Supreme Court found that the employee's belief that she had opposed unlawful activity was unreasonable. In Breeden, the

incident at issue was a male supervisor's comment, in the presence of the female employee, in which he read aloud and joked with a co-worker about a lewd comment made by a job applicant. Id. at 269. The Court explained that sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" Id. at 270 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 783 (1998)). The Court further explained that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not amount to a violation under Title VII. Id. at 271. The Court concluded as a matter of law that "[n]o reasonable person could have believed that the single incident . . . violated Title VII's standards." Id. at 271. The Supreme Court has established that a single incident, unless it is "extremely serious," is insufficient to find that the plaintiff's belief that the incident violated Title VII's standard is objectively reasonable. Id.

As set out by the Tenth Circuit, the Court must also evaluate the attendant circumstances and consider whether an employee in plaintiff's position would reasonably believe that the conduct she opposed is unlawful under Title VII. Id. at 1264. Plaintiff argues that a person in plaintiff's position could reasonably believe that Larry created a hostile work environment because of the prior incident in which he listened to "graphic pornographic material" at work and the unnamed female technician's "significant distress" about being required to work with Larry despite her having filed a complaint against him for that incident. Dkt. # 14, at 8. The Court disagrees that the isolated incident in this case, viewed objectively, could be deemed severe or pervasive.

Plaintiff alleges that Larry created a sexually hostile work environment based on a mere isolated incident in which he listened to pornographic material at work. Plaintiff does not allege that Larry engaged in this inappropriate conduct on more than one occasion. Plaintiff attempts to refute

that it was an isolated incident by arguing that the unnamed female technician's report against Larry "indicat[es] at least one prior incident." Dkt. # 14, at 8. However, the allegations in the complaint do not indicate that plaintiff had knowledge of more than once incident involving Larry. Accordingly, plaintiff does not make a sufficient showing of a pervasively hostile work environment based on the isolated incident. See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1365-66 (10th Cir. 1997) (concluding that "five separate incidents of allegedly sexually-oriented, offensive comments either directed to [the plaintiff] or made in her presence in a sixteen month period" were not sufficiently pervasive to support a hostile work environment claim); Morris v. City of Colorado Springs, 666 F.3d 654, 666 (10th Cir. 2012) (finding that a "few isolated incidents" are not sufficient to establish a pervasively hostile work environment).

Although hostile work environment claims "often involve repeated conduct," an isolated incident can rise to the level of a Title VII violation if that incident is "extremely serious." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc) (quoting Faragher, 524 U.S. at 788). Tenth Circuit precedent is instructive here. In Turnbull v. Topeka State Hosp., 255 F.3d 1238 (10th Cir. 2001), the Tenth Circuit considered reasonable a jury finding that a hostile work environment had been created where a female psychologist was sexually assaulted by a male patient. The patient verbally threatened and physically assaulted the psychologist, including chocking and digitally penetrating her. Id. at 1242-43. The Tenth Circuit held that although it was an isolated incident, the conduct was sufficiently severe due to its "objectively abusive [and] dangerous" nature. Id. at 1243-44. In another case, Lockard v. Pizza Hut, Inc., 162 F.3d 1062 (10th Cir. 1998), the plaintiff was similarly subjected to demonstrably severe and inappropriate conduct. Id. at 1072. There, the plaintiff was a waitress who had to experience "'filthy comments . . . such as 'I would like

to get into your pants'" made by two customers. Id. One customer "pulled her hair," and "grabbed her breast and placed his mouth on it." Id. As a result of the incident, the plaintiff's "emotional condition deteriorated to the point that she feared going out in public. Id. The Tenth Circuit found that harassing conduct by the two male customers sufficiently severe to create an abusive work environment. Id.

The incidents in Turnbull and Lockard are plainly distinguishable from the isolated incident in this case. Both involved instances of sexual assault, which can be viewed as objectively threatening and severe. See Morris, 666 F.3d at 667 (discussing Turnbull and Lockard). Both cases elucidate that the Tenth Circuit has required conduct to be "especially egregious or extreme where only isolated incidents are alleged." Id. Although Larry's conduct, construing the facts in the light most favorable to plaintiff, was unquestionably inappropriate in the workplace, the Court cannot conclude from the complaint that his conduct objectively altered the terms and conditions of either plaintiff's or the unnamed female technician's employment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) ("[N]ot all workplace conduct that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII.").

Larry's conduct was not directed at the unnamed female technician or another employee. Based on the facts alleged, it cannot be said that Larry's conduct was physically threatening or extremely humiliating. See Faragher, 524 U.S. at 788. Instead, Larry's conduct is akin to a "mere offensive utterance." See id. Plaintiff's complaint does not even include sufficient factual details to indicate that she was aware of the details of the incident. Plaintiff could not reasonably believe she was opposing a hostile work environment when she it appears she had no knowledge of the incident's severity, or lack thereof. Plaintiff makes no allegations as to when the incident occurred,

what Larry was listening to, how the unnamed female technician became aware of what Larry was listening to, or any other facts that would elevate the severity of the incident as alleged.

Further Tenth Circuit precedent indicates that successful hostile work environment claims based on isolated incidents feature conduct deliberately directed at the victim. For example, in Witt v. Roadway Exp., 136 F.3d 1424 (10th Cir. 1998), the Tenth Circuit explained that an insult "only inadvertently overheard indicates a lower degree of . . . severity than is present in the typical case, in which a[n] [employee] deliberately inflicts the harassment on the victim." Id. at 1433. Outside circuit precedent involving pornography in the workplace confirms the same. See Williams v. CSX Transp. Co., Inc., 533 F. App'x 637, 641-42 (6th Cir. 2013) (unpublished) (collecting cases).[2] Courts find that incidents involving "sometimes-visible pornography in the workplace" rise to the standard required by Title VII where additional severe or pervasive conduct is alleged, such as repeated vulgar, sexual comments directed specifically to the plaintiff. Id. Recognizing that plaintiff cannot be expected to be an expert in hostile work environment law, see Reznik, 18 F.4th at 1262-63, the Court nevertheless finds that no reasonable employee would believe that the single, isolated incident presented here constitutes a hostile work environment, considering that the conduct was not severe, pervasive, physically threatening, humiliating, or directed at any employee.

Plaintiff attempts to establish a hostile work environment merely from the fact that defendant assigned Larry to work the same shift as the unnamed female technician who previously reported Larry for listening to pornographic material at work. Dkt. # 14, at 8. However, plaintiff again falls short in showing that this is sufficient to create a hostile work environment. When the unnamed

---

[2] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1

female technician called plaintiff in distress about having to work with Larry, she was merely complaining about being forced to work with Larry because of the prior incident. There is no allegation that, at that time, Larry had engaged in further sexually inappropriate conduct for plaintiff to reasonably believe his conduct violated Title VII. The Court concludes that it is not reasonable for plaintiff to have believed that, any time an employer assigns an employee to work alongside another employee who submitted a prior complaint against that other employee, the employer is liable for creating a hostile work environment. And plaintiff does not cite any precedent to suggest otherwise. Plaintiff misguidedly assumes that Larry's mere presence at store 921, where the unnamed female technician was also assigned to work, was sufficiently severe or extreme as to alter the conditions of the unnamed female technician's employment. As the Court has explained, Larry's prior misconduct was not so severe or pervasive as to establish an objectively reasonable belief that Title VII was violated. Therefore, Larry's mere presence at store 921 at the same time as the unnamed female technician cannot reasonably constitute a Title VII violation.

Additionally, plaintiff has not adequately pled a causal connection between her opposition to the alleged hostile work environment and the materially adverse action. Plaintiff alleges that defendant, through Charlotte Weller, gave plaintiff a negative performance review with numerous pretextual criticisms, including that plaintiff violated company policy by working while sick. Dkt. # 1, at 10. Plaintiff argues that the temporal proximity between her opposition to Larry's assignment on May 23, 2025, and the "series of adverse actions" beginning with the negative review delivered by Charlotte Weller on May 26, 2025, supports a plausible inference of causation. Charlotte Weller took issue with plaintiff for working while ill on May 23, 2025, but the facts as alleged do not support that Charlotte Weller, or any other employee of defendant, took issue with plaintiff's

opposition to what she believed was a hostile work environment. In fact, plaintiff alleges that defendant "ignored the circumstances that prompted [p]laintiff's decision to report to work." Id. at 11. This suggests that the focus of the negative feedback was plaintiff's violation of company policy by working while sick, not plaintiff's opposition to the alleged hostile work environment. Even if the Court accepts an inference of causality due to the temporal proximity, plaintiff has not established that she engaged in protected activity because her belief that she was opposing conduct made unlawful by Title VII is not objectively reasonable.

**C. Leave to Amend**

The Court finds that dismissal of the two claims with prejudice is appropriate. Granting plaintiff leave to amend would be futile, as no legal authority supports plaintiff's "tortious retaliation" claim and plaintiff's allegations regarding her Title VII claim, although specific, fail to support a violation as a matter of law under Title VII . See Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006) ("Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 10) is **granted**. Plaintiff's second claim for relief (tortious retaliation under Oklahoma common law) and third claim for relief (retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)) are **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's request for leave to amend the complaint (Dkt. # 1) to cure the deficiencies identified herein is **denied**.

**IT IS FURTHER ORDERED** that a joint status report for plaintiff's Burk claim for wrongful discharge is due **November 23, 2026**.

**DATED** this 13th day of November, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE